United States District Court
Southern District of Texas
**ENTERED**
February 23, 2017
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA ORTIZ-SORNSON | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 16-cv-174 |
| | § | |
| RHONDA MCDONALD, MARLENE | § | |
| HOLLIER, STEVEN SCHNEE, and | § | |
| MENTAL HEALTH MENTAL | § | |
| RETARDATION AGENCY OF | § | |
| HARRIS COUNTY | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS FOR IMPROPER SERVICE

Pending before the Court is Defendants' Motion to Dismiss, filed on September 29, 2016, alleging improper service. [Doc. 23]. On November 16, 2016, United States District Judge Keith P. Ellison referred this motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Doc. 26].

## I.      BACKGROUND

This is an employment discrimination case. On January 20, 2016, Plaintiff sued the Mental Health Mental Retardation Agency of Harris County, now known as the Harris Center for Mental Health and IDD ("the Harris Center"); Rhonda McDonald ("McDonald"); Marlene Hollier ("Hollier"); and Dr. Steven Schnee ("Schnee") (all four Defendants collectively referred "the Harris Center Defendants"), alleging race discrimination, violation of the Family Medical Leave Act ("FMLA"), and intentional infliction of emotional distress. [Doc. 1].[1] Without

---

[1] Plaintiff also sued the Texas Department of Assistive and Rehabilitative Services ("DARS"), but non-suited with prejudice the claims against it in July 2016, after DARS filed a motion to dismiss. [Docs. 8, 18].

attempting service of process and before any of the Defendants filed an answer or other responsive pleading to the original complaint, on February 29, 2016, Plaintiff amended her complaint. [Doc. 3].

On March 9, 2016, forty-eight days after filing suit, Plaintiff used a process server and attempted to serve the amended complaint on the Harris Center Defendants. [Doc. 24 Ex. 1 ¶ 2].[2] Plaintiff claims that the process server left the summons and amended complaint with a paralegal at the offices of the Harris Center for all four Defendants. *Id.* at ¶¶ 13-15. On March 11, 2016, counsel for the Harris Center Defendants notified Plaintiff's counsel of deficiencies in the attempted service. [Doc. 23 pg. 8 Ex. E]. Plaintiff's counsel "*decided to ignore* Defendants' attorney's letter" because he believed that all of the Harris Center Defendants were properly served. [Doc. 24 ¶¶ 16-18 (emphasis added)]. Plaintiff failed to file proof of the March service of the amended complaint. The Harris Center Defendants did not file any responsive pleading to the amended complaint.

On July 29, 2016, Plaintiff filed a second amended complaint against the Harris Center Defendants. [Doc. 20]. On September 8, 2016, more than seven months after filing the original complaint, Plaintiff asserts that she again attempted service on the Harris Center Defendants, "as a courtesy." [Doc. 24 ¶ 17]. Plaintiff "decided to serve" the Harris Center by serving Schnee, but he was unavailable, so again copies were left with his office. *Id.* Later, Plaintiff purportedly mailed copies of the summons and amended complaint to Harris Center, again "as a courtesy." *Id.* McDonald and Hollier were served in person. *Id.* On September 23, 2016, Plaintiff filed a proof of service for Hollier, McDonald, and the Harris Center, but not Schnee, for the September service. [Doc. 21].

---

[2] Because the Plaintiff filed an amended complaint that does not incorporate or reference the original complaint, the amended complaint supersedes the original complaint and renders it of no legal effect. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Accordingly, Plaintiff was not required to serve the original complaint.

On September 29, 2016, the Harris Center Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(5), alleging a lack of personal jurisdiction and insufficient service of process. [Doc. 23].

## II.    PLAINTIFF MUST SERVE SUMMONS AND COMPLAINT WITHIN 90 DAYS OF FILING

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Rule 4 requires that a summons "be served with a copy of the complaint." Fed. R. Civ. P. 4(c). Service must be done "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). A person may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). A state-created governmental organization must be served by

> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B) serving a copy of each in the manner preserved by that state's law.

Fed. R. Civ. P. 4(j)(2)(A)-(B).

To accomplish service under Texas law, a party can deliver the summons to the defendant in person or mail it to the defendant by registered or certified mail, return receipt

requested. Tex. R. Civ. P. 106(a)(1)-(2). If service is effected through the mail, the process server

must execute a return of service that states how the defendant was served and contains the return

receipt with the addressee's signature. Tex. R. Civ. P. 107(b)-(c). After service, a plaintiff must

file proof of service, unless service is waived or a marshal effected service. Fed. R. Civ. P. 4(l).

The rules contain a strict time limit for the service. Rule 4(m) provides:

> If a defendant is **not served within 90 days** after the complaint is filed, the court
> – on motion or on its own after notice to the plaintiff – must **dismiss the action
> without prejudice** against that defendant or order that service be made within a
> specified time. But if the plaintiff shows **good cause** for the failure, the court
> **must extend the time** for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). Even if the plaintiff lacks good cause, the court has

discretionary power to extend the time for service. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d

321, 325 (5th Cir. 2008) (citing Rule 4(m) advisory committee's note (1993)).

When a party challenges service, the serving party has the burden to show either the

validity of the service or good cause for her failure to effect timely service. *Carimi v. Royal

Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1993). In most cases, the serving

party need only file proof of service with the court. *Parker v. Missouri City, Tex.*, No. 4:12-cv-

2484, 2014 WL 7004061, at *4 (S.D. Tex. Dec. 10, 2014) (Harmon, J.). If there is no defect on

the face of the return, the defendant must submit admissible evidence that shows service was not

proper. *Id.*; *see* Fed. R. Civ. P. 12(b)(5). The burden then shifts to the plaintiff to provide

admissible evidence that shows service was proper or a fact issue exists and requires an

evidentiary hearing. *Parker*, 2014 WL 7004061, at *4.

### III.     ANALYSIS

**A.     Plaintiff Failed to Serve the Harris Center Defendants Properly**

**1.     Plaintiff failed to serve the amended complaint properly in March**

The Harris Center Defendants argue that the case should be dismissed in its entirety because Plaintiff failed to serve them with a summons and the amended complaint—filed on January 20, 2016—within ninety days of filing the original complaint. [Doc. 23 pgs. 7-10]. Plaintiff argues that she effected service on all four Defendants when her process server left a copy of the summons and amended complaint with a paralegal for the Harris Center in March 2016. [Doc. 24 ¶¶ 14-15].

The Harris Center Defendants initially assert that service is defective because the process server failed to include the amended complaint with the summons. [Doc. 23 pg. 8, Ex. 2 ¶ 3 (Aff. of paralegal Christina Gerardo)]. Plaintiff never filed the return summons from March. In support of her response to the motion to dismiss, however, Plaintiff relies on her process server's affidavit that swears he left both the summons and amended complaint when he served the paralegal on behalf of all four of the Defendants on March 9, 2016. [Doc. 24 Ex. 1 ¶¶ 2-3]. This would ordinarily create a fact question as to the sufficiency of service in March. *See Parker*, 2014 WL 7004061, at *4.

However, Plaintiff failed to establish that leaving the summons with the Harris Center paralegal for each Defendant was proper service under the federal rules or Texas law. [Doc. 24 Ex. 1 ¶¶ 2]. In fact, Plaintiff's service on the paralegal was insufficient for all Defendants.

The Harris Center could be served only through its chief executive officer, Fed. R. Civ. P. 4(j)(2)(A), or certified mail, return receipt requested, Tex. R. Civ. P. 106(a)(2). Since Plaintiff did neither, service on the Harris Center was ineffective.

Hollier, McDonald, and Schnee could be served a summons and complaint either in

person, if left with a suitable person at their residence, if served on an agent authorized by appointment or by law to receive service of process, or through the mail. *See* Fed. R. Civ. P. 4(e); Tex. R. Civ. P. 106(a)(1)-(2). With respect to service on Schnee, Plaintiff claims that the paralegal said that she was authorized to accept service. [Doc. 24 ¶ 14.] With respect to Hollier and McDonald, Plaintiff relies on her process server to assert that the paralegal was a person authorized to receive service. [Doc. 24 ¶ 15.] The process server's affidavit swears that, in his experience, the paralegal had the authority to accept the summons for the agency, but he makes no such statement with respect to the individual Defendants. [Doc. 24 Ex. 1 ¶ 2]. Thus, Plaintiff has failed to prove that the paralegal had actual authority to accept service for any of the Defendants. *See Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002) (finding invalid service because there was no evidence that attorney had "actual authority to accept service of process"); *see also* 4A Wright & Miller, *Federal Practice and Procedure*, § 1097 ("the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction; there must be evidence that the defendant intended to confer that authority upon the agent in order to satisfy the terms of Rule 4(e)(2)(C)").

Although Texas law allows for a party to leave a copy of the summons and complaint at a person's usual place of business with a person over the age of sixteen, the plaintiff must first obtain a court order after establishing that she made previous attempts to serve the defendants but failed. *See* Tex. R. Civ. P. 106(b); *Gen. Elec. Capital Corp. v. Relko*, No. 1:12-CV-163, 2012 WL 12893412, at *1 (S.D. Tex. Oct. 5, 2012) (Tagle, J.) (granting such request for alternative method of service). Plaintiff neither filed a motion seeking, nor obtained a court order authorizing, alternative service. Plaintiff has failed to prove that the Harris Center paralegal was

an authorized representative to accept service, and therefore did not properly serve any of the Defendants in March 2016. *See* Fed. R. Civ. P. 4(e)(2).

### 2.      Plaintiff failed to serve Hollier, McDonald, or Schnee properly in September, more than seven months after filing the original complaint

After filing the second amended complaint in July, Plaintiff again used a process server, "as a courtesy," to attempt to serve the Harris Center Defendants in September. [Doc. 24 ¶ 17]. Plaintiff relies on Rule 5 (b)(2)(A)-(B) to argue proper service. Plaintiff's reliance on the more relaxed standards under Rule 5 is misplaced, however, because that rule applies to the service of pleadings and other papers; it does not apply to service of a summons and complaint as required under Rule 4 for the court to obtain jurisdiction over the Defendants. Moreover, the attempted service in September occurred more than seven months after Plaintiff filed her original complaint in January and violated Rule 4(m)'s requirement that service be accomplished within ninety days.

Notwithstanding the untimeliness of service, Hollier and McDonald filed affidavits in support of their motion to dismiss, asserting that they were not served properly on September 8 because a copy of the second amended complaint was not included with the summons. [Doc. 23 pgs. 6-7, Ex. B ¶ 4, Ex. C ¶ 4]. Plaintiff filed the return of service for Hollier and McDonald, but it indicates only that a summons was served and makes no mention of the second amended complaint. [Doc. 22 pgs. 3-6]. Plaintiff's process server admits in his affidavit that he failed to attach a copy of the second amended complaint to the summons he served on September 8. [Doc. 24 Ex. 1 ¶ 4]. Although Schnee does not challenge service on this basis, the Plaintiff's evidence establishes that he also was not served with the complaint. *Id.*

Because Rule 4(c) requires that a party must be served with *both* a summons *and* a copy of the complaint, when a summons fails to include a copy of the complaint, the court must find

that the service was insufficient. *See Blanton-Bey v. Carrell*, No. 4:09-cv-3697, 2010 WL 1337740, at *1 (S.D. Tex. Mar. 26, 2010) (Lake, J.). Thus, Plaintiff did not serve McDonald, Hollier, or Schnee properly in September because the summons did not include a copy of the complaint.

### 3. Plaintiff failed to serve the Harris Center properly in September

Again, despite the untimeliness of service more than seven months after Plaintiff filed her original complaint, Defendant Harris Center asserts that Plaintiff did not serve it properly on September 12 because she did not serve its chief executive officer. [Doc. 23 pgs. 4-5]. Plaintiff's summons and proof of service indicate she served "Harris County Judge, Hon. Ed Emmett" as the representative for the Harris Center. [Doc. 22 pgs. 1-2]. To dispute the return of service, the Harris Center submitted an affidavit from its General Counsel, Jeanne Mayo. She testified that the Harris Center is a local government organization that is a separate entity from Harris County. Further, her affidavit establishes that Schnee is the registered agent for accepting service of process for lawsuits against the Harris Center, not Judge Emmett. [Doc. 23 Ex. A ¶¶ 3-4]. Plaintiff has not provided any other evidence to the Court showing that service was proper or creating a fact issue that Judge Emmett is indeed the Harris Center's chief executive officer. *See Parker*, 2014 WL 7004061, at * 4. Accordingly, Plaintiff has not served the Harris Center properly. *See, e.g., Hoehn v. Dall. Cnty. Mental*, No. 05-94-cv-01515, 1995 WL 500271, at *2 (Tex. App.—Dallas [5th Dist.] Aug. 16, 1995) (not designated for publication) (finding improper service when plaintiff served county judge instead of administrative head of the county mental health facility).

### B. Plaintiff failed to establish good cause for violating Rule 4

The record establishes that Plaintiff failed to comply with Rule 4(m)'s requirement that the Defendants be served within ninety days of filing the original complaint inasmuch as none of

the Defendants have been served in compliance with the federal rules or Texas law as of yet. To avoid dismissal, Plaintiff must establish good cause for her failure to effect timely service. *See Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). Good cause is the equivalent of "excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id*. This typically requires a showing of good faith and "some reasonable basis for noncompliance." *Id.*

Plaintiff has failed to provide the court with any evidence to suggest good cause for her failure to serve the Defendants timely. Instead, the record reflects that, despite the fact that Defendants' counsel notified him that service was defective, Plaintiff's counsel "decided to ignore" it based on his own belief that service was proper. [Doc. 24 ¶ 16]. There is no proof that Plaintiff's counsel even attempted to contact opposing counsel to confer about service. The evidence establishes counsel's mistake as to the facts and ignorance of the rules. This does not suffice to establish good cause and the Court has the discretion to dismiss Plaintiff's claims. *See Thrasher*, 709 F.3d at 512 (collecting cases that affirmed dismissal on failure to establish good cause even when refiling would be barred by limitations); *Parker*, 2014 WL 7004061, at * 4.

## C. The Court Has Discretion To Extend The Time For Service Even When Plaintiff Lacks Good Cause

Plaintiff urges this Court to grant her additional time to serve the Defendants because dismissal could be tantamount to dismissal with prejudice based on the running of the statute of limitations. [Doc. 24 pg. 8]. The Harris Center Defendants suggest that only some of the claims would be time-barred. [Doc. 23 n.3]. Neither party briefed the limitations issue. Nonetheless, the Court finds that dismissal based on the Plaintiff's failure to serve the Defendants is not

warranted.[3]

Even if Plaintiff lacks good cause, the court has discretion to extend the time for service of process. *Thrasher*, 709 F.3d at 511 (citing *Millan*, 546 F.3d at 325). When a plaintiff lacks good cause, the court has broad discretion to dismiss the suit; however, if dismissal is tantamount to dismissal with prejudice because limitations would bar future litigation, the court has limited discretion to dismiss the claims. *See Millan*, 546 F.3d at 326.[4]

"[D]ismissal with prejudice is an extreme sanction that deprives a litigant of the opportunity to pursue his claim," and is warranted only when a "clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *Id*.; *see also Thrasher*, 709 F.3d at 514 ("Lesser sanctions include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings."). The Fifth Circuit has held that delay that warrants dismissal with prejudice is longer than a few months and requires "significant periods of total inactivity." *Millan*, 546 F.3d at 326-27. This record shows a delay of about seven months, during which counsel attempted service, albeit ineffective, twice. During that time, Plaintiff amended

---

[3]  Since Plaintiff alleges that she was terminated in January 2014, her § 1981 claim would not time-barred because a four-year limitations period would apply to her post-hiring claims. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (four-year limitations for § 1981 claim "made possible" by the amendments in 1991); *Rothrock v. Gorman*, No. 3:12-cv-00241, 2013 WL 3461913, at *5 (S.D. Tex. July 1, 2013) (Costa, J.) (four-year limitations applies for § 1981 claims asserted through § 1983). It is unclear whether the FMLA claim would be time-barred because Plaintiff has not alleged the date of the interference. *See* 29 U.S.C. § 2617(c)(1)-(2) (three-year period for willful violations of the FMLA, two-year period for all other claims). The intentional infliction of emotional distress claim has a two-year limitations period and would likely be time-barred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (two-year limitations period for personal injury claims). Because the intentional infliction of emotional distress claim is preempted, however, the fact that this claim would be time-barred is immaterial. *See infra* § D(4).

[4]  When a case is dismissed, the effect is to "render the proceedings a nullity and leave the parties as if the action had never been brought." *Thompson v. Greyhound Lines, Inc.*, 574 F. App'x, 407, 409 (5th Cir. 2014). By quashing service, the Court is not dismissing the case and the limitations period remains tolled. *See* 5B Wright & Miller, *Federal Practice & Procedure*, § 1354 ("In the case of a dismissal, the plaintiff merely reinstitutes the action and has process served again, making sure that the earlier defect in the summons or the mode of service has been corrected. When process is quashed, only the service need be repeated.").

the complaint twice and non-suited another Defendant. This is not the type of delay that warrants dismissal with prejudice. *See id.*

Likewise, the record does not establish that Plaintiff's delay in effecting service resulted from contumacious conduct. "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead it is the stubborn resistance to authority which justifies a dismissal with prejudice." *Id.* at 327 (finding dismissal was error when plaintiff's conduct was negligent and not contumacious) (quoting *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988)); *see also Aguirre v. ISC Constructors, LLC*, 70 F. Supp. 3d 766, 779 (E.D. Tex. 2014) ("negligence and lack of due diligence on the part of a plaintiff's attorney in perfecting the pleadings and effectuating service properly [does] not rise to the necessary level of 'contumacious conduct' to justify dismissal with prejudice").

In most cases, the court will dismiss with prejudice only after finding one of the following three factors: "(1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Millan*, 546 F.3d at 325; *see also Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) ("We have stated that aggravating factors must 'usually' be found; we have not said they must 'always' be found.").

### 1. Plaintiff has not caused the delay

Defendants have not established that Plaintiff, as opposed to her counsel, purposefully caused the delay in failing to serve them. *See Pankowski v. Bluenrgy Grp. Ltd.*, No. 4:15-cv-1668, 2016 WL 7179122, at *5 (S.D. Tex. Dec. 9, 2016) (Miller, J.) (distinguishing between counsel's and the plaintiff's delay). In fact, the evidence suggests that counsel and the process

server's errors caused the delay. There is no evidence that Plaintiff herself caused any of the delay.

### 2.     Defendants have not shown actual prejudice

Defendants have not claimed that the delay in service caused them actual prejudice. In fact, the Defendants' own evidence shows that they had actual knowledge of the lawsuit in March and therefore could have suffered no prejudice from a lack of notice.

### 3.     There is no evidence that Plaintiff's conduct was intentional

Defendants have failed to establish that Plaintiff's conduct was intentional. When a party disobeys or ignores a court order to execute service, a court may find intentional conduct. *See Thrasher*, 709 F.3d at 514 ("Because the district court's warning of dismissal and grant of extensions accompanied by generous allotments of time did not influence Thrasher to effect service properly, we cannot say that the district court abused its discretion in dismissing Thrasher's claim."). Here, Plaintiff's counsel has not disobeyed a court order requiring service. Defendants had not previously sought court intervention.

Defendants' evidence of intentional conduct does not rise to the level of disobeying a court order. Plaintiff's counsel's failure to respond to Defendants' letter stating that they were not properly served is, at best, negligence, not the "stubborn resistance to authority which justifies a dismissal with prejudice." *See Millan*, 546 F.3d at 327. In fact, Plaintiff attempted service again after filing the second amended complaint, even though it also was deficient. Further, some of the deficiencies in September — the failure to serve the complaint and summons together and not personally serving Schnee — may be placed on the process server, not Plaintiff's counsel.

Accordingly, the Court does not recommend dismissal based on Plaintiff's failure to serve the Defendants timely and properly, but instead recommends that the district judge exercise his discretion to extend the time for Plaintiff to effect proper service on Defendants.

**D.     Plaintiff Must Amend Her Complaint Before Service on Defendants Because She Failed to State a Claim for Relief**

The Court has *sua sponte*[5] reviewed Plaintiff's claims and determines that she failed to state a claim for relief, except for her discrimination claim against McDonald and her FMLA claims against McDonald and the Harris Center; all of Plaintiff's other claims are deficient. The Court "is authorized to consider the sufficiency of the complaint on its own initiative." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007) (quoting *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991)); *see also De La Cruz v. Hernandez*, No. M:03-cv-326, 2005 WL 1248876, at *1 (S.D. Tex. Apr. 25, 2005) (Crane, J.) (adopting magistrate judge's report and recommendation to *sua sponte* dismiss complaint for failure to state a claim); *Jones v. Luthi*, 586 F. Supp. 2d 595, 606 (D.S.C. 2008), *aff'd*, 324 F. App'x 253 (4th Cir. 2009) (concluding that magistrate judge that *sua sponte* recommended summary judgment was within the mandates of 28 U.S.C. § 636(b)). The Court recommends dismissal of her deficient claims, but under the facts of this case, also recommends that the Plaintiff be granted leave to amend.[6]

---

[5] Because the Plaintiff raised the limitations issue to avoid dismissal for improper service, the Court was required to review the complaint and, in doing so, examined the sufficiency of the pleadings.

[6] All of the § 1981 and FMLA claims against Schnee, Harris Center's Director, and Hollier, the Executive Director in the Harris Center division in which Plaintiff worked, are deficient. Because some of Plaintiff's claims survive against McDonald and the Harris Center, an amended complaint should relate back to the original filing date for statute of limitations purposes. *See Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958, 980 (S.D. Tex. 2012) (Ellison, J.). Since Schnee and Hollier were on notice of these claims, any limitations bar for the FMLA claims may not afford them protection from an amended complaint. *See id.; see also Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. H:9-cv-4039, 2012 WL 1596710, at *4 (S.D. Tex. May 4, 2012) (Ellison, J.) (quoting *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir.1985)). Even if Plaintiff does not amend, the § 1981 discrimination claim can proceed against McDonald, Plaintiff's direct supervisor, and the FMLA claims can proceed against McDonald and the Harris Center, her employer.

### 1.      Legal standard: Plaintiff must plead facts sufficient to state a plausible claim

"[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.,* 681 F.3d 215, 219 (5th Cir. 2012). A complaint is insufficient if it offers only "labels and conclusions, [and] a formulaic recitation of the elements of a cause of action." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted)).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012) (Ellison, J.). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Id.* (citing *Iqbal*, 556 U.S. at 678).

Rule 8 requires fair notice. *See* Fed. R. Civ. P. 8(a). "'Fair notice under Rule 8(a)(2) depends on the type of case . . . .'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Phillips  v. Cnty. of Allegheny*, 515 F.3d 224, 239 (3d Cir. 2008)). The *Robbins* Court explained the importance of identifying what each defendant purportedly did in a § 1983 case:

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is

> alleged to have done *what* to *whom*, to provide each individual with fair notice as
> to the basis of the claims against him or her, as distinguished from collective
> allegations against the state.

*Id.* at 1249-50 (citing *Twombly*, 550 U.S. at 565 n.10) (§ 1983 case where defendants asserted
qualified immunity).[7]

Courts have interpreted Rule 8(a)(2) and 12(b)(6) to require the plaintiff to distinguish
the actions of one defendant from the other. *See, e.g., Del Castillo v. PMI Holdings N. Am. Inc.*,
No. 4:14-cv-03435, 2016 WL 3745953, at *17 (S.D. Tex. July 13, 2016) (Ellison, J.) (the
amended complaint "continues to lump together multiple defendants—and, in many instances,
all defendants—while providing insufficient factual basis on which to distinguish the individual
defendant's conduct") (negligence action) (citing *Robbins*, 519 F.3d at 1249-50 ("Given the
complaint's use of either the collective term 'Defendants' or a list of the defendants named
individually but with no distinction as to what acts are attributable to whom, it is impossible for
any of these individuals to ascertain what particular acts they are alleged to have committed."));
*see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirmed dismissal
when the plaintiff failed to "allege, with particularity facts that demonstrate what each defendant
did to violate the asserted constitutional right") (*Bivens* action against federal officer for
excessive force, illegal search and seizure, false arrest, malicious prosecution, and retaliation, not
decided on qualified immunity); *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001)
("By lumping all the defendants together in each claim and providing no factual basis to
distinguish their conduct, [the] complaint failed to satisfy [the] minimum standard" that "a

---

[7] Defendants here have not asserted qualified immunity at this stage. When a defendant asserts qualified immunity,
the plaintiff is held to a heightened standard that requires her to plead specific and particularized facts to support an
allegation that each defendant violated her rights. *See Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("[A]
plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the
reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity
defense with equal specificity."). Here, the Court does not rely on the heightened pleading standard.

complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests.") (action under 42 U.S.C. §§ 1981, 1982, 1983, 1985 based on constitutional violations, not decided on qualified immunity); *Stokes v. OneWest Bank*, No. 4:14-cv-247, 2014 WL 5473193, at *3 (N.D. Tex. Oct. 28, 2014) (dismissed when plaintiff failed to distinguish and specify the acts each defendant committed) (wrongful foreclosure).

The plaintiff, at a minimum, should explain what role each defendant played in the allegations, rather than grouping all defendants together. *See Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-cv-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) (Ellison, J.); *see also Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-cv-130, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016) ("Plaintiffs have failed to distinguish between the two defendants they allege to be successors—Patterson-UTI and UPP—in a way that allows Defendants and the Court to understand what role each allegedly plays in Plaintiffs' claims.") (Fair Labor Standards Act case).

If the plaintiff fails to distinguish between each defendant or identify each defendant's role, the court should freely grant leave when justice requires under Fed. R. Civ. P. 8(e); it is "especially appropriate" when the complaint is dismissed for failure to state a claim. *See Gonzalez v. Reed–Joseph Int'l Co.*, No. 4:11-cv-01094, 2012 WL 12894214, at *2 (S.D. Tex. Nov. 27, 2012) (Ellison, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

### 2.     § 1981 discrimination and retaliation claims

Plaintiff brings two § 1981 claims against the Harris Center Defendants.[8] Plaintiff alleges racial discrimination and that the Harris Center Defendants retaliated against her after she

---

[8] Plaintiff also alleged that this cause of action is brought pursuant to the Fourth Amendment. [Doc. 20 ¶ 2]. However, Plaintiff has not alleged that she was subject to an unreasonable search or seizure.

complained to the human resources department of perceived racial discrimination. [Doc. 20 ¶¶ 25-26, 29-30]. Plaintiff brings her § 1981 claim against the Harris Center Defendants through § 1983 because § 1981 does not create a right of action to sue municipal entities and its employees. *See Oden v. Oktibbeha Cnty., Miss.,* 246 F.3d 458, 462 (5th Cir. 2001) (a plaintiff may "pursue a § 1983 cause of action against persons acting under color of state law in order to assert [his or her] substantive rights under § 1981"); *Rothrock*, 2013 WL 3461913, at *2 ("Under Fifth Circuit precedent, section 1981 creates an independent cause of action against private actors, but for suits such as this one against state actors, plaintiffs must assert a cause of action under § 1983 to remedy violations of civil rights under § 1981.") (internal citations omitted).

### a.     Plaintiff has pled a § 1981 discrimination claim against McDonald but not Hollier

To adequately plead a claim of racial discrimination, a plaintiff must plead that she was discriminated against because of her race, i.e., that the challenged action was taken with a discriminatory intent or racial animus. *Raj v. La State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (noting that the elements of a Title VII, § 1981, and § 1983 claim for racial discrimination are identical). Absent direct evidence of discrimination, the plaintiff must show that she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show[] that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (prima facie case of discrimination). While the plaintiff does not have to meet a prima facie case at the pleading stage, analyzing the elements "may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., LLC*, No. 15-40595, 2016 WL 4446075, at *1 (5th Cir. Aug. 23, 2016) (citing *Leal v.*

17

*McHugh*, 731 F.3d 405, 413 (5th Cir. 2013)); *see Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016) (per curiam) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). Because Plaintiff alleges discrimination under a disparate treatment theory, the ultimate issue is whether she has pled that the Defendant treated her less favorably than others based on her race or national origin. *See Raj*, 714 F.3d at 331.

### i. Plaintiff sufficiently pled discrimination against McDonald

Plaintiff has alleged discriminatory intent sufficiently against McDonald. Plaintiff alleged that she was a Child Development Assistant, but McDonald placed her in a new position as an Intake Coordinator, while also retaining her prior job responsibilities. [*Id. ¶* 13]. In addition, McDonald gave her an excessive workload that no other similarly situated employee had. [*Id.* ¶ 15-16, 23]. Further, Plaintiff alleged that McDonald did not allow her to use a flexible hours work schedule. [Doc. 20. ¶¶ 13, 15-17, 21, 23]. While it is not clear from the complaint that the new position is in fact a demotion, these acts could be construed as adverse employment actions in a discrimination claim. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (finding adverse employment action when a transfer was the equivalent of a demotion); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating"). She also alleged that she is the "only person of Spanish origin in the office." [Doc. 20 ¶ 17]. As the only person in the office of Spanish origin to have suffered these adverse employment actions, Plaintiff has pled a discrimination claim against McDonald because it is at least plausible that McDonald treated Plaintiff differently because of her race. *See Iqbal*, 556 U.S. at 678.

### ii.    Plaintiff has not sufficiently pled discrimination against Hollier

A supervisor may not be held liable under § 1983 on the basis of *respondeat superior*. *See Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (applying this principle to both Title VII and § 1983 claims). Rather, the misconduct of an employee must be "affirmatively linked to the action or inaction of the supervisor." *Id*. A plaintiff must show that the supervisor "affirmatively participate[d] in acts that cause[d] constitutional deprivation or implement[ed] unconstitutional policies that causally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996) (citing *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)). Alternatively, a plaintiff can show inaction in the face of the supervisor's obligation to supervise or train and that inaction amounted to a deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (recognizing that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).

Plaintiff has not pled that Hollier affirmatively participated in the adverse employment actions or implemented policies to discriminate against Plaintiff. She pled that Hollier failed in her responsibility to supervise McDonald and that this failure caused the discrimination. [Doc. 20 ¶¶ 7, 10]. Plaintiff alleged that while Hollier was the executive director of Plaintiff's division at the Harris Center, she was aware of McDonald's discriminatory conduct, could have prevented or stopped it, and did nothing to stop it. [Doc. 20 ¶¶ 7, 10]. This allegation is a legal conclusion and "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. Plaintiff has not pled specific facts of how Hollier's actions or inactions amounted to deliberate indifference.

19

*See Dean v. Harris Cnty.*, No. H:13-cv-73, 2013 WL 5214351, at *9 (S.D. Tex. Sept. 17, 2013) (Miller, J.) ("if the plaintiff fails to plead deliberate indifference, he has failed to plead his claims of supervisory liability properly") (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009)). Therefore, Plaintiff has not pled a § 1981 discrimination claim sufficiently against Hollier.

> **b.      Plaintiff has not pled a § 1981 retaliation claim against any Defendant because she failed to identify who retaliated against her**

Section 1981 affords a cause of action to an employee who has been retaliated against for participating in protected action, including filing a complaint of perceived discrimination. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). The elements of a retaliation cause of action are: "(1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse employment action followed; and (3) that there was a causal connection between the two." *Id.* (citing *Goff v. Cont'l Oil Co.*, 678 F.2d 593, 599 (5th Cir. 1982)). Unlike in a discrimination claim, adverse employment actions in a retaliation claim are not limited to actions that affect the employment terms and conditions. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (analyzing the text of Title VII's discrimination and retaliation provisions). Congress wanted to protect against retaliation that might occur outside of the workplace that did not directly relate to an employee's terms of employment. *Id.* at 63 ("A provision limited to employment-related actions would not deter the many forms that effective retaliation can take."). Accordingly, the Supreme Court issued a flexible standard for analyzing adverse actions in retaliation claims. *See id.* at 68. "To make out an adverse employment action for retaliation, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal

20

quotations omitted).

Plaintiff alleged that, after she complained to the human resources department, she was terminated, but failed to identify who terminated her. [Doc. 20 ¶ 26]. Additionally, she alleged that "Defendants" failed to inform her of her health benefits that she had accrued and "Defendants" gave false information to the TWC that prevented Plaintiff from receiving unemployment benefits. [*Id.* ¶¶ 27-28]. While these actions could be considered adverse employment actions in a retaliation claim, she has not identified the actor. *See Del Castillo*, 2015 WL 3833447, at *6 ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct."); *see also Goodison v. Washington Mut. Bank*, 232 F. App'x 922, 923 (11th Cir. 2007) (affirming *sua sponte* dismissal where plaintiff did not designate which defendant she was accusing of for each count); *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant"). Therefore, the § 1981 retaliation claim against the Harris Center Defendants should be dismissed.

### c.   Plaintiff has not pled a § 1983 claim for discrimination or retaliation against the Harris Center because she has not identified a policy or a custom

The Harris Center is a municipal entity amenable to suit under § 1983. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). An entity may not be found liable under § 1983 based on *respondeat superior*. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). It can only be found liable when there is a "policy" or "custom" in place and that policy or custom was the "moving force" behind violation of the plaintiff's constitutional rights. *Id.* (noting that official policy may be promulgated policy statement, ordinances, or regulations and custom may be a persistent, widespread practice of officials).

21

Plaintiff has not identified a policy or custom or policymaker in her allegations. *See Miller v. City of Hous.*, No. 4:11-cv-429, 2013 WL 6222539, at *5 (S.D. Tex. Nov. 29, 2013) (Hoyt, J.) ("the plaintiff has not identified a policy or custom upon which her claim might rest nor has she offered any indication of a persistent widespread practice"). As such, the § 1983 claim alleging violations of her § 1981 rights against the Harris Center should be dismissed.

### 3.    FMLA claims for interference and retaliation

Plaintiff has alleged two claims of a violation of the FMLA. First, the Harris Center Defendants interfered with her FMLA rights when she was told that the days she took off from work for medical reasons counted against her vacation period. [Doc. 20 ¶ 20]. She has alleged that she was the only one who was subject to this treatment. *Id.* Second, the Harris Center Defendants retaliated against her for taking FMLA leave. [Doc. 20 ¶ 32].

Under the FMLA, an employee may sue "any employer" who violates the terms of the FMLA. 29 U.S.C. § 2617 (a)(1). An employer includes a "public agency," which is "the government of a State or political subdivision thereof, any agency of . . . a State, or a political subdivision of a State." 29 U.S.C. §§ 203(x), 2611(4)(A)(iii). The term "employer" also "includes any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(ii)(I). This includes a public employee. *See Modica v. Taylor*, 465 F.3d 174, 184 (5th Cir. 2006) (recognizing circuit disagreement).

The FMLA prohibits employers from "interfering with, restraining, or denying the exercise or the attempt to exercise, any right provided under the Act." *Harville v. Tex. A & M Univ.*, 833 F. Supp. 2d 645, 653 (S.D. Tex. 2011) (Hoyt, J.) (quoting 29 U.S.C. § 2615(a)(1)). "Interference" is not defined in the statute, but the Department of Labor regulations explain that inference includes "not only refusing to authorize FMLA leave, but [also] discouraging an employee from using such leave." 29 C.F.R. § 825.220. Further, an employee "must give notice

that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA." *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762–64 (5th Cir. 1995)).

In addition, it is unlawful to retaliate against an employee for taking or seeking to take FMLA leave. 29 C.F.R. § 825.220. In assessing a FMLA retaliation claim, the plaintiff must make a prima facie showing that: "(1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). To determine whether the adverse employment action was taken as a result of the plaintiff seeking FMLA protection, the court considers the "temporal proximity" between the FMLA leave and the adverse employment action. *Id.*

### a. Plaintiff has pled FMLA interference and retaliation claims against McDonald

Plaintiff alleged that after she took days off from work because her doctor instructed her to do so,[9] "she was informed by her supervisor that those days counted against her vacation period already accumulated . . . ." [Doc. 20 ¶ 20]. McDonald was Plaintiff's direct supervisor. [Doc. 20 ¶ 6]. Not authorizing FMLA leave is a cognizable claim for interference with the exercise of FMLA rights. See *Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 346 (5th Cir. 2013) (citing 29 C.F.R. § 825.220(b)). Therefore, Plaintiff has pled a claim for FMLA interference against McDonald.

---

[9] The complaint does not plead the circumstances of the notice Plaintiff provided to Defendant; however, whether an employee provided her employer with sufficient notice is a fact-intensive question more appropriate for summary judgment. *See Ruiz v. Edcouch-Elsa Indep. Sch. Dist.*, No. 7:13-cv-443, 2014 WL 1385877, at *4 (S.D. Tex. Apr. 9, 2014) (Crane, J.); *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 873-74 (S.D. Tex. 2008) (Atlas, J.) ("Determining whether an employee properly notified an employer of her desire to take FMLA leave necessarily involves a factual inquiry.").

Plaintiff has also alleged that McDonald retaliated against her for seeking to take FMLA leave. Although Plaintiff has not provided dates for the alleged unlawful conduct, her complaint reads chronologically. *See Tackett v. City of Ponchatoula*, No. 94-cv-1456, 1995 WL 164946, at *9 (E.D. La. Apr. 6, 1995) (interpreting complaint that lists events chronologically to assume that the final event listed occurred last in time). The paragraph after she alleged she attempted to take FMLA leave, Plaintiff alleged McDonald treated her differently from other employees when McDonald did not allow Plaintiff to use flexible hours. [Doc. 20 ¶ 20-21]. Therefore, Plaintiff has pled a cognizable claim for a FMLA violation against McDonald. *See Mauder*, 446 F.3d at 583.

### b.    Plaintiff has not pled FMLA interference or retaliation claims against Hollier

Plaintiff has not pled that Hollier participated in interfering with her FMLA rights or that she retaliated against her for wishing to take FMLA leave. She pled that her "supervisor" acted in the interference, [Doc. 20 ¶ 20] and McDonald was her direct supervisor, [*id. ¶* 6]. Under the FMLA, liability can be imposed on the employer or an employee who "acts, directly or indirectly, in the interest of an employer." 29 U.S.C. § 2611(4)(A)(ii). Because Plaintiff failed to allege Hollier's acts of interference or retaliation, the FMLA claims against Hollier should be dismissed.

### c.    Plaintiff has pled FMLA interference and retaliation claims against the Harris Center

The Harris Center is an employer under the FMLA because it is a political subdivision of the State. *See* 29 U.S.C. §§ 203(x), 2611(4)(A)(iii). Acts of McDonald are attributed to the Harris Center because she acted directly in the interest of her employer. *See* 29 U.S.C. § 2611(4)(ii). Therefore, Plaintiff sufficiently pled FMLA claims against the Harris Center.

### 4.      The intentional infliction of emotional distress claim is preempted

In Texas, the tort of intentional infliction of emotional distress is a gap-filler cause of action "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). An intentional infliction of emotional distress claim cannot be brought when a plaintiff has alleged a statutory violation based on the same set of facts because the legislature has created limitations on mental anguish and punitive damages. *Id.* ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."). Allowing such claims would thwart legislatively-imposed limitations. *Id.*

Federal courts routinely dismiss the intentional infliction of emotional distress claim under *Hoffman-La Roche* when the federal discrimination claim is based on the same set of facts as the state law intentional infliction of emotional distress claim. *See, e.g., Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 457 (S.D. Tex. 2010) (Harmon, J.) ("common law IIED [claim] is barred as a matter of law because the same facts are alleged by Plaintiff to support it and the ADA claims, so Plaintiff's only remedies are those available under the ADA"); *Elsik v. Regency Nursing Ctr. Partners of Kingsville, Ltd.*, No. V:06-cv-41, 2007 WL 2428288, at *7 (S.D. Tex. Aug. 22, 2007) (Rainey, J.) (dismissing intentional infliction of emotional distress claim because the plaintiff alleged a § 1981 and Title VII claim based on the same set of facts); *Stewart v. Hous. Lighting & Power Co.*, 998 F. Supp. 746, 754 (S.D. Tex. 1998) (Kent, J.) ("When a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted.").

Additionally, the Harris Center is immune from suit as a governmental unit. *See Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code § 101.021, Tex. Health & Safety Code Ann. § 534.001). Texas has not waived sovereign immunity for torts involving intentional infliction of emotional distress. *Goldman v. Williams,* 101 F. Supp. 3d 620, 654 (S.D. Tex. 2015) (Lake, J.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.057).

Therefore, because Plaintiff has pled discrimination and retaliation claims against the Defendants based on the same facts, the intentional infliction of emotional distress claim should be dismissed with prejudice. Moreover, the Harris Center has sovereign immunity for this claim.

### 5. All the claims against Schnee are insufficient because Plaintiff has failed to allege that he acted

Plaintiff alleges that Schnee is the Director of the Harris Center and that he "had the ultimate power to hire and/reinstate the Plaintiff." *Id*. This is a bald allegation that does not connect Schnee to any of the unlawful acts. Schnee should be dismissed from the suit. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The Court notes that in her response to Defendants' motion to dismiss, Plaintiff alleged that Schnee instructed her not to close the case files that McDonald had previously instructed her to close. [Doc. 20 ¶ 9; Doc. 24 ¶ 9]. Even if this one act was attributed to Schnee, giving conflicting instructions is not an adverse employment action for discrimination claims. *See Benningfield v. City of Hous.*, 157 F.3d 369, 376-77 (5th Cir. 1998). Therefore, the claims against Schnee should be dismissed.

## IV.    CONCLUSION

The Court recommends that Defendants' motion to dismiss for improper service be denied, the returns of service for Hollier, McDonald, Schnee, and the Harris Center, be quashed, and that the Court grant Plaintiff twenty-one days from the adoption of this report to effectuate proper service on Defendants.

The Court *sua sponte* recommends as follows:

1. the § 1981 discrimination claim against the Harris Center, Hollier, and Schnee be dismissed without prejudice,

2. the § 1981 retaliation claim against the Harris Center Defendants be dismissed without prejudice,

3. the FMLA interference and retaliation claims against Schnee and Hollier be dismissed without prejudice,

4. the intentional infliction of emotional distress claim against the Harris Center Defendants be dismissed with prejudice because they are preempted, and

5. Plaintiff be granted leave to amend to re-plead her § 1981 and FMLA claims consistent with this Court's opinion within twenty-one days from the adoption of this report.

The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on February 22, 2017, at Houston, Texas.

_____

Dena Hanovice Palermo
United States Magistrate Judge